UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIE WILSON,

    Petitioner,

v.                                                                    Case No. 2:06-cv-179
                                                                      HON. GORDON J. QUIST

GERALD HOFBAUER,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

        Petitioner Willie Wilson filed this petition for writ of habeas corpus challenging the validity of his state court conviction for assault with intent to commit great bodily harm less than murder. Petitioner was convicted after a jury trial and was sentenced as a fourth habitual offender to a prison term of 10 to 30 years, consecutive to completing his paroled sentence.

        Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

        Petitioner has raised the following issues in his petition:

> I. Mr. Wilson did not receive a fair trial where the trial judge Charles Simon was replaced by another judge after testimony was taken but before the verdict was rendered and sentence imposed with no regard to the due process requirements embodied in MCR 6.440 and relevant

case law, and no regard to the absence of personal knowledge of the evidence presented at sentencing. Accordingly, defendant is entitled to a new trial, or minimally, to be re-sentenced by Judge Simon.

II. The prosecutor's repeated references to domestic violence after those charges had been dismissed and her presentation of evidence not relevant to a non-domestic violence case constituted prosecutorial misconduct where it served to confuse the jury who were not instructed on those lesser offenses and blurred the issues at bar.

III. Scoring errors were committed as follows: An OV 7 score of 50 is excessive and in defiance of legislative intent where the victim was not subjected to terrorism, sadism, torture, or excessive brutality and the judge and assistance prosecutor were unaware of the facts of the case not having been present at trial; and an OV 13 score is incorrect where the sentencing court fails to employ the instruction that the five year period under consideration include the sentencing offense.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*

*v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.*  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 412.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption

of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that he was denied a fair trial when the trial judge was replaced by another judge, after testimony was taken and before the jury returned the verdict. The Michigan Court of Appeals rejected petitioner's claims stating:

> With respect to the assigned judge replacing the visiting judge at the end of the trial, defendant certainly cannot demonstrate prejudice. After substituting in, the assigned judge did four things: receive the verdict, take defendant's guilty plea on the habitual offender notice, revoke defendant's bond (with defendant's consent), and order DNA testing as required. In short, the judge did nothing that required his presence at the trial or make any decision that was dependent in any way on any information presented during the trial. The exact same actions would have been taken by the visiting judge had he remained through the end of the trial.
>
> The only suggestion of prejudice at the trial stage advanced by defendant is the "subtle harm" caused by the visiting judge's departure, which may have caused the jury to regard the trial as "unimportant" because it was "not important enough" to cause the presiding judge to return to receive the verdict. Defendant concedes that the "ramifications of this dismissive treatment . . . cannot be measured," but asserts that "we can be sure that it had an impact." We are by no means so sure that it had any such impact. At the beginning of the trial, the visiting judge introduced himself to the jury panel as a retired judge from Ionia County who was filling in because the assigned judge was ill. Before releasing the jury prior to deliberations, the visiting judge informed the jury that the assigned judge was now able to come back on a limited basis and would be there the next day. This hardly suggests that the visiting judge found the trial unimportant; rather, it suggests that the assigned judge was doing better and could resume his duties and a substitute judge was no longer necessary.
>
> For these reasons, we conclude that defendant has not met his burden of establishing prejudice with respect to the assigned judge returning to receive the verdict. Accordingly, review of this issue has been forfeited under *Carines, supra* at 763.

But the issue of sentence being imposed by the assigned judge rather than the visiting judge who presided over the trial is not so easily resolved. First, a plain error did occur as a defendant has the right to be sentenced by the judge who presided over the trial. *People v Bart (On Rem)*, 220 Mich App 1, 8; 558 NW2d 449 (1996). But we are not persuaded that defendant has met his burden of establishing prejudice. Defendant's only argument in this respect is that he was "disadvantaged" in having the assigned judge handle the sentencing in responding to defendant's challenge to the scoring of Offense Variable 7 without the judge having heard the evidence at trial. We disagree.

First, defendant mischaracterizes the sentencing judge's actions as raising the score of OV-7 from zero to fifty points. The judge did no such thing. The presentence report had scored OV-7 at fifty points. At sentencing, defendant objected to that scoring. The only basis offered at sentencing for the objection, however, is that in the trial prosecutor's sentencing memorandum at "no time does she request or does she stand by and request 50 points as scored by Probation which obviously did not sit through the trial, your Honor. I'd ask that that be scored zero." Thus, the sentencing judge did not raise the scoring from that recommended by the presentence report; he merely affirmed that score despite the fact that the trial prosecutor had not suggested that any points be scored for OV-7 in her sentencing memorandum.

Second, the trial court stated the reasons for rejecting defendant's objections to the scoring as the reasons stated by the assistant prosecutor present at sentencing, as well as facts given in the presentence report. Further, the trial indicated that the sole reason given by defendant, the fact that the trial prosecutor's sentencing memorandum fails to discuss OV-7 was an inadequate reason to challenge the scoring.

Third, defendant can, and in fact does, challenge the scoring to OV-7 on appeal. Thus, if the trial court's lessened familiarity with the case caused it to make an erroneous ruling on defendant's challenge to the scoring, that error can be corrected on appellate review.

For these reasons, we are not persuaded that defendant has met his burden of establishing prejudice by the error. Accordingly, defendant has also forfeited on this issue. *Carines, supra*.

Judge Simon presided over the trial in this case because Judge Nichols was ill. Judge Nichols returned to take the jury verdict and to sentence petitioner. Petitioner has not established

any violation of his constitutional rights as a result of Judge Nichols taking the verdict and sentencing petitioner. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the prosecutor committed misconduct by repeatedly referring to domestic violence after those charges had been dismissed. Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).

The Michigan Court of Appeals explained:

> Defendant first argues that the prosecutor engaged in misconduct by characterizing this case as a domestic violence case after the misdemeanor domestic assault charges were dismissed. We review claims of prosecutorial misconduct de novo to determine whether defendant was denied a fair trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Defendant's argument is frivolous, being based upon the inaccurate assumption that domestic violence

> is limited to misdemeanor assaults. Domestic violence includes any of the assaults. Indeed, even murder may be characterized as domestic violence. Domestic violence is not a specific crime, but a description of circumstances surrounding a violent crime in which the perpetrator and victim have a pre-existing relationship that may be categorized as a "domestic" relationship.
>
> In fact, while the misdemeanor charges that were dismissed may sometimes be labeled "domestic assault," see, e.g., CJI2d 17.2a, or, as the prosecutor did in the information in this case, "domestic violence," the Legislature applies no such label. Nor does the Legislature define the misdemeanor domestic assaults as separate crimes. Rather, within the provisions of the existing misdemeanor assaults (assault, assault and battery, and aggravated assault), the legislature has provided for sentence enhancements for persons convicted of those assaults if committed within a domestic context and if the defendant has a prior conviction for any of a variety of assaults committed in a domestic context.
>
> Moreover, in establishing those enhancements, the Legislature defines an assault as being a domestic assault if the defendant and the victim have ever been married to each other, have ever resided together, had a child in common, or have ever had a dating relationship. See MCL 750.81(2), (3), and (4) and MCL 750.81a(2) and (3). Moreover, the prior convictions which can be considered, if committed in a domestic context, can include certain felony assaults–felonious assault, assault with intent to commit murder, assault with intent to do great bodily harm, and assault with intent to maim. Therefore, the Legislature clearly includes these felony assaults, including the offenses with which defendant was charged in this case, as being a "domestic assault." Indeed, because defendant was convicted of one of the crimes listed in the statute and the victim was his wife, defendant's current conviction may properly be used as a predicate conviction for any future enhancement of a misdemeanor domestic assault conviction. Thus, while the Legislature has not chosen to enhance the penalties for felony assaults that occur in the domestic context, clearly the Legislature regards those assaults as constituting domestic violence.

The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that inadmissable evidence was admitted regarding his relationship with the victim including when he met the victim, when they married, and other details regarding their relationship. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. The Michigan Court of Appeals rejected this claim. Petitioner has failed to show that his constitutional rights were violated.

Similarly, petitioner asserts that it was error for the court to fail to instruct on misdemeanor crimes of assault and domestic violence. The Michigan Court of Appeals rejected this claim. Petitioner never requested these instructions at trial. Moreover, petitioner has not established any violation of his federal rights. Further, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the trial court committed error in petitioner's sentencing guideline score. The Michigan Court of Appeals concluded that the petitioner's sentencing guideline score was calculated correctly based upon the facts of the case. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that petitioner challenges the correctness of his sentence on the basis of state law, petitioner is not entitled to habeas review unless there has been a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990).

Furthermore, MCL § 769.12 (fourth habitual offender) provides for punishment of imprisonment for life or for any term of years when the subsequent felony provides a maximum term of more than five years. MCL § 750.84 provides a maximum term of ten years. Accordingly, petitioner could have been sentenced to life or any term of years  Therefore, petitioner has not set

forth a federal question because his sentence was imposed within the state statutory limit. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988).

> [A] state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. *E.G.*, *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648-49, 91 L.Ed. 8181 (1947); *United States v. Jackson*, 696 F.2d 320, 321 (5th Cir. 1983); *Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976). If the sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentence's discretion and thereby deprived petitioner of his liberty.

*Id.* at 923-24.

Petitioner's sentence does not exceed the statutory limit nor has petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court

in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner has failed to show a violation of his constitution rights when a different judge took the verdict and sentenced petitioner. Petitioner failed to show prosecutorial misconduct, or a constitutional error regarding admission of evidence or jury instructions occurred. Petitioner failed to show that his federal rights were violated at the sentencing proceeding. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   November 24, 2008